IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **JILLIAN DINARDO,** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No.: CBD-19-1841** |
| **v.** | * | |
| | * | |
| **IT'S MY AMPHITHEATER, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | ***** | |

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion"),
ECF No. 30.  The Court has reviewed Defendant's Motion, the opposition thereto, and
Defendant's Reply.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the
reasons set forth below, the Court GRANTS Defendant's Motion.

### I.    Factual Background

On June 26, 2016, Plaintiff Jillian DiNardo attended the Kerfuffle music festival at the
Merriweather Post Pavilion, in Columbia, Maryland.  Compl. ¶¶ 8–9.  Upon arrival, Plaintiff was
directed to park in a specific garage ("Lot 4").  *Id.* at ¶ 10.  Plaintiff left the festival around 10:45
p.m.  *Id.* at ¶ 18.  As Plaintiff approached her car, Plaintiff was sexually and physically assaulted
by an unknown adult male in Lot 4.  *Id.*  Plaintiff alleges that during the assault, "she screamed
for help to no avail, as there was no security guard on duty to hear her or intervene."  *Id.* at ¶ 19.
Plaintiff also states that she reached into her car and honked the horn, which startled her
assailant.  *Id.* at ¶ 20. "The attacker [then] fled the scene, jumped from the parking garage

balcony, and disappeared into the night." *Id.*  Plaintiff asserts that as a result of the assault, she suffered severe, persistent, and permanent, emotional, mental, and psychological injuries.  *Id.* Plaintiff also states that she was diagnosed with Generalized Anxiety Disorder and Acute Post-Traumatic Stress Disorder.  *Id.* at ¶ 21.

Plaintiff filed a complaint in this Court on June 21, 2019.  Compl. 1, ECF No. 1.[1]

## II.    Standard of Review

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A court must construe the facts alleged and reasonable inferences in favor of the nonmoving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

To prevail on a motion for summary judgment, the moving party must show that no genuine issue of fact exists and that it is entitled to judgment as a matter of law.  *Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

---

[1] Plaintiff's complaint originally included one count of negligence against It's My Party, Inc. and The Howard Hughes Corp.  However, the Court granted a stipulation of the parties for both Defendants and dismissed them from this lawsuit.  *See* ECF No. 33.

"Once the moving party discharges its burden . . . the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002). When the nonmoving party has the burden of proof, it is that party's responsibility to confront the motion for summary judgment with affirmative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "The disputed facts must be material to an issue necessary for the proper resolution of the case." *Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (citations omitted). However, "when a party fails to demonstrate the existence of a genuine issue of material fact, the court should grant summary judgment." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. Feb. 22, 2021).

### III.    Analysis

Plaintiff alleges that she was an invitee to Lot 4, and Defendant owed her a duty to exercise reasonable care, "to eliminate foreseeable and known dangerous conditions for invitees by, among other things, installing lights, installing security cameras, and posting security personnel in premises under its control, operation, and management, including but not limited to Lot 4." Compl. ¶¶ 14, 23. Plaintiff contends that Defendant breached its duty when it failed to install adequate lighting or security cameras, and when it failed to post, ensure the presence of, or otherwise provide security personnel in Lot 4. *Id.* at ¶¶ 24–25. Plaintiff asserts that as a direct and proximate cause of Defendant's breach: 1) Defendant created a foreseeably dangerous condition and put invitees such as Plaintiff at an unreasonable risk of harm; 2) Plaintiff suffered a sexual assault and resulting injures; 3) Plaintiff received extensive psychiatric and psychological

treatment; and 4) Plaintiff continues to suffer economic damages, expenses for medical

treatment, and emotional and psychological pain and suffering. *Id.* at ¶¶ 26-30.

Defendant avers that it did not owe Plaintiff a legal duty, and even if it did, it did not owe

Plaintiff a duty to protect her from the criminal activity of a third party. Def.'s Mot. 1, ECF No.

30.

## A. Defendant did not owe a duty to Plaintiff.

"A federal court sitting in diversity must apply the law of the state in which the court is

located, including the forum state's choice of law rules." *Rybas v. Riverview Hotel Corp.*, 21 F.

Supp. 3d 548, 559-60 (D. Md. 2014). For tort claims, "Maryland applies the law of the state

where the alleged harm occurred ('*lex loci delicti*')." *Id.* at 560. In this case, the Court has

diversity jurisdiction under 28 U.S.C. § 1332(a)(1). The alleged events took place in Maryland.

Therefore, the Court applies the substantive tort law of Maryland.

To establish a claim for negligence in Maryland, the plaintiff must prove: "(1) that the

defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached

that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury

proximately resulted from the defendant's breach of the duty." *Moore v. Jimel, Inc.*, 147 Md.

App. 336, 337-38 (Md. Ct. Spec. App. 2002) (citing *Valentine v. On Target*, 353 Md. 544, 549

(1999)); *accord Tallmadge v. K-C Bldg. Ass'n of Bowie, Inc.*, 223 Md. App. 775 (2015) (citing

*Sterling v. Johns Hopkins Hosp.,* 145 Md. App. 161, 169 (citations, internal quotation marks,

footnote and emphasis omitted)), *cert. denied*, 371 Md. 264 (2002).

Thus, to prevail, Defendant must prove that there is no genuine dispute as to a material

fact and that it is entitled to judgment as a matter of law regarding any of the four elements

above. *Miller v. Live Nation Worldwide, Inc.*, No. CV CBD-14-2697, 2016 WL 374103, at *2

(D. Md. Feb. 1, 2016), order clarified on reconsideration, No. CV CBD-14-2697, 2016 WL

1696541 (D. Md. Apr. 28, 2016).  "The threshold requirement is the existence of a duty."

*Tallmadge,* 223 Md. App. 775 (citing *Sterling*, 145 Md. App. at 169, 802 A.2d at 444).

It is the Court's responsibility to determine whether a legal duty exists.  *Corinaldi v. Columbia*

*Courtyard, Inc.,* 162 Md. App. 207, 218, 873 A.2d 483 (2005) ("Whether a plaintiff has

presented sufficient evidence of the elements of negligence is generally a question for the fact

finder, but the existence of a legal duty is a question of law to be decided by the court.").  If there

is no duty, then the negligence claim cannot withstand summary judgment.  *Evergreen Assocs.,*

*LLC v. Crawford*, 214 Md. App. 179, 187, 75 A.3d 1038, 1043 (2013).

        It is well-settled that in premises liability cases in Maryland, a possessor of land or a

landowner, owes an invitee:

> [The] duty to exercise reasonable care to 'protect the invitee from injury caused by an
> unreasonable risk' that the invitee would be unlikely to perceive in the exercise of
> ordinary care ... and about which the owner knows or could have discovered in the
> exercise of reasonable care.

*Fleming v. Scott*, No. 636, Sept. Term,2020, 2021 WL 1747936, at *3 (Md. Ct. Spec. App. May

3, 2021).  A possessor of land includes:

> (a) A person who is in occupation of the land with intent to control it or;
> (b) A person who has been in occupation of land with intent to control it, if no
> other person has subsequently occupied it with intent to control it, or;
> (c) A person who is entitled to immediate occupation of the land, if no other
> person is in possession under Clauses (a) and (b).

*Elliott v. AZZ, LLC*, No. 1960, Sept. term, 2017, 2021 WL 1149698, at *8 (Md. Ct. Spec. App.

Mar. 25, 2021) (citing RESTATEMENT (SECOND) OF TORTS § 328E (1965)).  The duty

owed by a possessor of land depends on the individual's status on the property.  *Elliott*, 2021 WL

1149698, at *7 (citing *Rowley v. City of Baltimore,* 305 Md. 456, 464, 505 A.2d 494, 498

(1986); *Sherman v. Suburban Trust Co.,* 282 Md. 238, 241-42, 384 A.2d 76, 79 (1978) (citing

*Bramble v. Thompson,* 264 Md. 518, 521, 287 A.2d 265, 267 (1972)).  The status may be that of

an invitee, licensee by invitation, bare licensee, or trespasser.  *Id.*  Generally, "[t]he highest duty

is owed to an invitee; namely, the duty to 'use reasonable and ordinary care to keep the premises

safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which

the invitee by exercising ordinary care for the invitee's own safety will not discover.'"  *Macias v.*

*Summit Mgmt., Inc*., 243 Md. App. 294, 317, 220 A.3d 363, 376 (2019) (citing *Deboy v. City of*

*Crisfield*, 167 Md. App. 548, 555, 893 A.2d 1189, 1193 (2006); *see also Rivas v. Oxon Hill Joint*

*Venture*, 130 Md. App. 101, 109, 744 A.2d 1076, 1081 (2000) ("An invitee is 'owed a duty of

ordinary care to keep the property safe.'").  An invitee is "invited or permitted to enter or remain

on another's property for purposes connected with or related to the owner's business."  *Bramble*,

264 Md. at 521, 287 A.2d at 267.

　　Here, Plaintiff claims that she was an invitee to Lot 4, and that Defendant owed her a

duty to exercise reasonable care to eliminate foreseeable and known dangerous conditions.[2]

---

[2] Defendant avers that "Plaintiff misstates the duty of care a business owes to invitees in her Complaint.  [Plaintiff] alleges that invitees are owed a 'duty to eliminate foreseeable and known dangerous conditions.'"  Def.'s Mem. in Supp. of Def.'s Mot. 15 n5.  Defendant states that the "duty in Maryland to an invitee is 'a duty to use reasonable and ordinary care to keep the premises safe and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover.'"  *Southland Corp. v. Griffith*, 332 Md. 704, 715-16, 633 A.2d 84, 89 (1993)."  Although this Court agrees with Defendant, the Court also accepts Plaintiff's interpretation.  For clarification purposes, in *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) the Court stated that:

> [A]n owner or occupier of land only has a duty to exercise reasonable care to 'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care.

*Tennant*, 115 Md. App. at 388, 693 A.2d at 374.  However, within the same paragraph the Court states that "[t]he duties of a business invitor thus includes the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers."  *Id.*  Thus, the Court does not believe Plaintiff misstated the law.  Rather, it appears Plaintiff stated the duties owed to a business invitee – "duty to eliminate foreseeable and known dangerous conditions," which is encompassed in the broader duty of business invitors to exercise reasonable and ordinary care to protect the invitee from an unreasonable risk.  *Id.*

Compl. ¶¶ 14, 23.  Thus the Court must determine whether Defendant owed Plaintiff a duty.  As stated above, Defendant operated and hosted the Kerfuffle music festival that Plaintiff attended at the Merriweather Post Pavilion.  Compl. ¶ 8.  Plaintiff parked in Lot 4, to attend the festival.  *Id.* at ¶ 10.  Plaintiff states throughout her response that Defendant owed a duty to her, because "by contract, [Defendant] agreed to occupy and assume exclusive control of Lot 4 during the June 26, 2016, Kerfuffle Music Festival and stand in the shoes of the garage owner with respect to maintenance, management, and security of the garage."; "by execution of the [Parking] Agreement, [Defendant] attained a complete transfer of occupancy and control of the subject garage for a defined period of time, in connection with its events at Merriweather Post Pavilion"; "[Defendant] operated, managed, and controlled exclusively [Lot 4]"; and that "[Defendant] undertook sole control and occupancy of Lot 4."  *See* Pl.'s Mem. in Supp. of Pl.'s Opp'n 5-7, 10-15.  ECF No. 31–1.  For the reasons stated below, this Court disagrees.

The facts state, and Plaintiff acknowledges that Defendant did not own outright, but was a Licensee to Lot 4, to use the Licensors parking facilities for the events they held at the Merriweather Post Pavilion.  *Id.* at 11 ("[Defendant] was given [a] license to utilize Lot 4 'for the parking of passenger motor vehicles by Licensee's customers and attendees of events at [Merriweather Post Pavilion].'"  Although Defendant operates and hosts events at Merriweather Post Pavilion, they are not the owner of the parking garage Lot 4.  *See* Def.'s Mem. in Supp. of Def.'s Mot. Ex. 1, Def.'s Resp. to Pl.'s Interrogs. 10, ECF No. 30-4; *see also id.*, Ex.4[3], Parking License Agreement ("Parking Agreement"), ECF No. 30–7.  Lot 4 is alleged to be owned by 50/60/70 CCC.  *See id.*, Ex. 3, Howard Hughes Corp. Resp. to Pl.'s Interrogs. 12, ECF. No. 30-6.

---

[3] Plaintiff incorrectly labeled the Parking Agreement as Exhibit 3.  However, it is filed and referenced to as Exhibit 4.

Lot 4 is allegedly operated and managed by Howard Hughes Management Services Company

LLC, Town Center East Business Trust, and Town Center East Parking Lot Business Trust

(collectively "Licensors").  *See id.*; *see also* Ex. 4, Parking Agreement.

　　　Plaintiff mistakenly states that Defendant had "exclusive control" over Lot 4.  *See*

*generally* Pl.'s Mem. in Supp. of Pl.'s Opp'n.  On the contrary, Defendant signed a "non-

exclusive" agreement to use the parking facilities, specifically for events they host at the

Merriweather Post Pavilion.  *See* Def.'s Mem. in Supp. of Def.'s Mot., Ex. 4, Parking Agreement

2 ("Licensor hereby grants to Licensee a non-exclusive license to use the Parking Facilities.").

Further, it was operated and managed by the Licensors.  *Id.*  Thus, without exclusive control of

the property, Defendant did not owe Plaintiff a duty.  *See Palmer v. Urgo Hotels, L.P.*, No. 8:18-

CV-0085-PX, 2018 WL 5026372, at *2 (D. Md. Oct. 17, 2018) ("where a defendant exercises no

control over the premises, it cannot be said to assume liability for injuries that occurred on the

premises");  *Leppo v. Jacobs Facilities, Inc.*, No. CIV.A CCB-09-3415, 2010 WL 3085430, at *4

(D. Md. Aug. 6, 2010) (where the court granted the defendant summary judgment, holding that

"[the plaintiff's] claim that [the defendant] owed him a duty of care as an invitee. . . fails because

[the defendant did not own the property where the injury happened] and [the plaintiff] did not

allege that [the defendant] had exclusive control or possession over the site.");  *Id.* (citing *Rowley*

*v. Mayor & City Council of Baltimore,* 305 Md. 456, 505 A.2d 494, 498 (Md. 1986) (stating that

"an individual who is not the landowner will owe a duty to invitees if he has exclusive control

and possession over the land.")).

　　　Plaintiff argues that instead of an invitee, Defendant was rather a lessee and leased the

garage for specified periods of time, therefore having exclusive control of Lot 4.  Pl.'s Mem. in

Supp. of Pl.'s Opp'n 15.  The Court finds Plaintiff's interpretation of the facts incorrect.  This

case is distinguishable from cases in which the court found that the defendant entered into a lease agreement, had exclusive control and ownership over the property, and therefore a duty may have transferred to patrons.

For instance, in *Henley v. Prince George's County*, the court granted summary judgment to the defendant "the College," the owner of the property, and held the lessee responsible for a murder committed on the property, holding that "the uncontested facts demonstrated beyond dispute that the College had surrendered control of the premises to the County during the period of time involved in the action." *Henley v. Prince George's Cty.*, 305 Md. 320, 337, 503 A.2d 1333, 1342 (1986). The court found that the agreement between "the College" and the lessee, granted the lessee the right to 'use and occupy' the property for a specified term. *Id.* The agreement also gave the lessee the exclusive right of occupancy of the property "therefore effectively transfer[ing] the duties owed by an occupier of land." *Id.* The court explained that "[e]ven a temporary surrender of possession not accompanied by a lease may relieve an owner of liability for unsafe conditions arising after his surrender." *Id.* (citing *See Restatement (Second) of Torts* § 422).

In the instant case, Defendant never had exclusive control of the parking garage to occupy as it wished, and there is no evidence that the owner surrendered its possession, such that it transferred the duties of the occupier of the land. Instead, through the "Parking Agreement," Defendant had a non-exclusive control of the property for certain events, and Defendant had to abide by certain conditions, enumerated by the lessor. *See* Def.'s Mem. in Supp. of Def.'s Mot. Ex.4, Parking Agreement. Even though, the Parking Agreement states Defendant was responsible for "providing all necessary security and management of the parking Facilities," as Plaintiff points out, Pl.'s Mem. in Supp. of Pl.'s Opp'n. 13-15, the owner and occupier of the

land still retained control over the security of the premises. *See id*. The parking owner contracted with Universal Protection Services to provide security services at the parking garage and other nearby properties. *See id.*, Ex. 3, Howard Hughes Corp. Resp. to Pl.'s Interrogs. 5. The owner of Lot 4, 50/60/60 CCC Parking Deck, and its' operator, Howard Hughes Management Services Company, LLC, were responsible for maintaining lighting in the parking garage. *See. id*. at Interrog, 7. The Parking Agreement allowed the Licensors to supplement security personnel. Def.'s Mem. in Supp. of Def.'s Mot. Ex. 4, Parking Agreement, Ex. E-1 ¶ 4. Lastly, the Parking Agreement used the term "sole" to differentiate when the Licensee would be solely responsible for certain tasks.[4] *See generally* Def.'s Mem. in Supp. of Def.'s Mot. Ex. 4, Parking Agreement. Thus, the facts here do not support the contention that Defendant had exclusive use and control of the property.

Our case is analogous to *Elliott*, 2021 WL 1149698. In that case, the plaintiff and her family went to eat at a restaurant named Sapore Di Mare which was owned and operated by AZZ, LLC ("AZZ"). *Id.* at 1. Upon arriving at the restaurant, the plaintiff and her family noticed that there were no parking spots available in the parking lot of the restaurant.[5] *Id.* at 3. Instead, the family parked at an adjacent parking lot that was a carryout restaurant owned by Goody's Too, LLC ("Goody's"). *Id.* After the family dined at the restaurant, they walked towards their vehicle on the adjacent property. *Id.* While walking, the plaintiff sustained injuries by falling into a hole on the property of Goody's. *Id.* "

The undisputed evidence in this case

---

[4] The Court is not stating that the use of word "sole" in and of itself translates into a duty. However, in this case, the word "sole" points to situations in the contract that only Defendant was responsible for. *See id.* Ex. 4, Parking Agreement ("Licensee, at its sole expense, shall promptly clean the Facilities and the Parking Parcels of any litter and debris . . .").

[5] The plaintiff's husband dropped the plaintiff and her son at the front door to the restaurant. *Elliott v. AZZ, LLC*, No. 1960, Sept.term,2017, 2021 WL 1149698, at *3 (Md. Ct. Spec. App. Mar. 25, 2021). The plaintiff's husband, then went to park the vehicle at Goody's. *Id.*

established that AZZ is not the owner of the property upon which Ms. Elliott fell."  *Id.* at 7.

The court held that while the plaintiff and her family were business invitees of the restaurant, and AZZ owed them a duty of care while on their premises, that duty did not extend beyond the property where AZZ conducted its business.  *Id.*  The court also held that the duty AZZ owed the plaintiff and her family terminated once the plaintiff and her family left the restaurant property and went onto the property of another.  *Id.*  Thus, the court affirmed summary judgment for AZZ.

*Id.* at 7.  Similarly, in the instant case, Plaintiff parked her car, at an adjacent property near where she conducted business, which was the concert at the Merriweather Pavilion.[6]  Like in *Elliott*, the facts of this case do not suggest that Defendant owned or had exclusive "use and control" of Lot 4.

Since the Court finds that Defendant did not owe Plaintiff a duty, this case cannot withstand summary judgment.  *See Evergreen Assocs.,* LLC, 214 Md. App. at 187, 75 A.3d at 1043.  Therefore, the Court finds that there is no genuine issue for trial and Defendant is entitled to judgment as a matter of law.

### B.  Even if Defendant owed Plaintiff a duty, Defendant had no duty to protect Plaintiff from the criminal acts of third parties.

Defendant argues that it did not owe Plaintiff a legal duty because the law in Maryland clearly states that a duty to an invitee does not encompass a duty to protect against the criminal activity of a third party.[7]  Def.'s Mem. in Supp. of Def.'s Mot. 13.  This Court agrees.

---

[6] Although Defendant operated the Merriweather Post Pavilion, Defendant did not own it.  *See* Def.'s Mem. in Supp. of Def.'s Mot. 4 ¶ 2; *see also* Def.'s Mem. in Supp. of Def.'s Mot., Ex. 1, Howard Hughes Corp. Resp. to Pl.'s Interrogs. 11 (Merriweather Post Business trust was the owner of the Merriweather Post Pavilion at the time of the incident).   However, since the injury did not occur on that property and the issue here does not revolve around who owned or had use and control of the Merriweather Pavilion, and the Court finds it is not dispositive, the Court declines to discuss this issue further.

[7] At no point does Defendant acknowledge that it owes Plaintiff a duty.  Defendant argues however, that if Plaintiff were to convince the Court that it owed Plaintiff a duty, it would not encompass a duty to protect against the criminal activities of third parties.

Generally, "there is no duty to protect a victim from the criminal acts of a third person in the absence of a statute, contract, or other relationship between the party in question and the third person, which imposes a duty to control the third person's conduct, or between the party in question and the victim, which imposes a duty to protect the victim." *Corinaldi v. Columbia Courtyard, Inc*., 162 Md. App. 207, 219, 873 A.2d 483 (2005) *see Tucker v. KFC Nat. Mgmt. Co.,* 689 F. Supp. 560, 562 (D. Md. 1988) *aff'd,* 872 F.2d 419 (4th Cir. 1989) ("[t]he duty to protect patrons against conduct of third parties does not exceed the general duty of care and duty to warn of hidden dangers."); *Jackson v. A.M.F. Bowling Ctrs., Inc.,* 128 F. Supp. 2d 307, 311 (D. Md. 2001) (business owner's duty to protect invitee from risks arising out of intentional or criminal acts of third parties does not require owner to take precautions against a sudden attack from a third person which he has no reason to anticipate); *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 98 (D. Md. 2011) (citing *McGuiness v. Brink's Inc.,* 60 F. Supp. 2d 496, 499 (D. Md. 1999) (even if a duty is owed, unforeseeable criminal acts of a third-party break the chain of causation, relieving the original negligent actor of liability)).  However, "a business owner may be liable for third party criminal activity on its premises due to the foreseeability of that criminal activity."  *Erikson v. Pilot Travel Centers, LLC*, No. CIV. CCB-11-0461, 2012 WL 2359421, at *3 (D. Md. June 20, 2012).  In Maryland, circumstances in which a possessor of land may be held liable when someone is injured by third-party criminal activity on their premises include: 1) knowledge of past events of similar criminal activity on the premises creating a duty to eradicate the conditions that contributed to the criminal activity; 2) knowledge of prior related conduct by the same assailant which made the incident foreseeable; and 3) knowledge of situations occurring on the premises just before and leading up to the incident at issue which triggered the duty to act.  *Jones v. Godfrey*, No. RWT 04CV3379, 2008

WL 1701088, at *11 (D. Md. Mar. 3, 2008); *see Corinaldi*, 162 Md. App. at 223-24, 873 A.2d at 492.

Maryland Courts have hesitated to find that a duty exists against the criminal acts of third parties, where the prior incidents are "insufficient in number and not sufficiently similar in kind." *Erikson*, 2012 WL 2359421, at *2. In *Erikson*, the incident occurred at a gas station. *Id.* at 1. The plaintiff was pumping gasoline in his vehicle, when two unknown men ("the assailants") approached him. *Id.* The assailants began to antagonize the plaintiff and verbally threaten him. *Id.* The assailants exited their vehicle and began to walk towards the plaintiff. *Id.* One of the assailants started to push the plaintiff, and then both assailants pinned him in the center of his truck. *Id.* The plaintiff did not recall what happened next. However, the plaintiff lost consciousness and required medical attention. *Id.* The Court held that although there were two prior incidents on the property – a robbery and a theft – those incidents were not "sufficiently similar in nature to the violent assault suffered by the plaintiff." *Id.* at 4. The Court also held that the physical injuries that the plaintiff sustained were not foreseeable "by virtue of two incidents of criminal activity since 1996." *Id.*

The Court in *Smith v. Dodge Plaza Ltd. P'ship*, 148 Md. App. 335, 811 A.2d 881 (2002), also found that the defendant did not owe a duty to protect the plaintiff from the criminal activity of a third party. In that case, a patron was stabbed at a nightclub. The patron produced two prior incidents reports and other evidence of previous assaults that had occurred on the property. *Smith v. Dodge Plaza Ltd. P'ship*, 148 Md. App. 335, 340, 811 A.2d 881, 884 (2002). The court found that the plaintiff failed to produce any evidence that the owner of the nightclub "had actual notice of any incident of criminal violence against [a patron in the nightclub or parking lot]." *Id.* Even so, the court held that even though there were two prior occurrences of violence within the

nightclub two years before the stabbing, none of those incidents involved a weapon.  *Id.*  Without

the involvement of a weapon, there was no legal sufficiency to put the landowner "on

constructive notice of a danger to patrons of criminal injury . . . beyond that normally

encountered in urban society."  *Id.* at 346.

      Similarly, in *Moore v. Jimel, Inc.,* 147 Md. App. 336, 809 A.2d 10 (2002), the plaintiff

was assaulted in a bar restroom and contended that the bar negligently failed to provide security

on the premises.  The court held that since there was no evidence of a prior physical or sexual

assault, and the plaintiff failed to show any evidence that a crime previously had been committed

against a patron, "there was no foreseeability of risk to create a special duty."  *Id.* at 343, 349.

      Here, there was no evidence of prior sexual assaults at Lot 4.  Def.'s Mem. in Supp. of

Def.'s Mot., Ex. 2, (Parker Aff. ¶¶ 11-12.), ECF No. 30-5.  Nor was there any evidence of any

criminal or sexual assaults near Lot 4, including the Merriweather Post Pavilion, or any of the

parking facilities licensed for events at the Merriweather Post Pavilion.  *Id.* at (Parker Aff. ¶¶ 5-

10.); *see also* Def.'s Mem. in Supp. of Def.'s Mot. Ex. 1, Def.'s Resp. to Pl.'s Interrogs. 14-15.

Moreover, there were no reports or findings of crimes conducted against a person in Lot 4, prior

to Ms. DiNardo's incident, by the same assailant.  *Id.*  In fact, there was no evidence of any

criminal assaults occurring nearby any of the parking facilities licensed for events at

Merriweather Post Pavilion for the past ten years.  *Id.* at (Parker Aff. ¶¶ 9-10.)*.*  Plaintiff did not

produce evidence that otherwise showed there had been a past assault in Lot 4 that may have

provided Defendant with foreseeable notice of prior similar conduct or events that may have

triggered a duty to act**.**

      Plaintiff argues that the assault "should have been foreseeable to a prudent company that

controlled a garage at night in an urban environment in connection with a large-scale concert event." Pl.'s Mem. in Supp. of Pl.'s Opp'n 5. Plaintiff contends that "sexual crimes in parking garages at night are facially foreseeable. *Id.* at 14. Plaintiff also points to past incidents that occurred at the Merriweather Post Pavilion, including at least one death and several hospitalizations stemming from a block party in 2014, a domestic violence incident, an assault on a police officer, and alcohol and other drug related offenses. *Id*. at 13-14; *see also* Compl. ¶ 15. Plaintiff relies on the Expert Report of Michael Hodge. *See* Expert Report of Michael Hodge, Pl.'s Mem. in Supp. of Pl.'s Opp'n, Ex. G, ECF No. 31-10. In his report, Mr. Hodge points to statistics from the Bureau of Justice and Department of Justice that he alleges establish that "parking garages, by their nature, create a foreseeably heightened risk of harm to patrons and invitees." *Id.* at 4. Mr. Hodge also opines, *inter alia*, that Defendant "was obligated to use reasonable care and employ adequate and reasonable security measures to control the subject parking garage and protect [Plaintiff] from foreseeable harm." *Id.*

As stated above, the determination of whether Defendant had a duty is a legal question to be determined by the Court. *Corinaldi,* 162 Md. App. at 218. The Court also finds that the Expert Report that Defendant essentially owed Plaintiff a duty is conclusory. *See Smith v. Dodge Plaza Ltd. P'ship*, 148 Md. App. at 354, 811 A.2d at 892 (finding that the expert's opinion "it is customary for a commercial landlord to take reasonable steps to insure that adequate security is provided by its tenants," was entirely conclusory); *see also id.* (quoting *State Health Dep't v. Walker,* 238 Md. 512, 520, 209 A.2d 555, 559 (1965) ("An expert opinion 'derives its probative force from the facts on which it is predicated, and these must be legally sufficient to sustain the opinion of the expert.'")); *Skrabak v. Skrabak*, 108 Md. App. 633, 648, 673 A.2d 732, 739 (1996) (holding that "the expert's opinion as to the worth of institutional

goodwill had no value because the facts upon which it was based simply do not support his

opinion."  The court also found that there was "no logical basis" for the expert's opinion on the

valuation of the corporation's goodwill, "other than guesswork and speculation.").

Although Plaintiff cites criminal conduct on or around Merriweather Post Pavilion during

concert events, general crime is insufficient to hold that a sexual assault in Lot 4 is foreseeable.

*See id.*  Plaintiff has not provided evidence that Defendant "had any actual notice of any incident

of criminal violence against someone in Lot 4."  *See Smith*, 148 Md. App. at 340, 811 A.2d at

884.  Further, without a sexual assault or even a criminal assault occurring in Lot 4, "there was

no legal sufficiency to put the landowner 'on constructive notice of a danger to patrons of

criminal injury . . . beyond that normally encountered in urban society.'"  *Id.* at 346.

The Court finds that Defendant did not owe any duty to Plaintiff because it was not the

owner of Lot 4, and there was no evidence that Defendant had exclusive use and control of Lot 4.

However, even if Plaintiff believed that a duty was owed to her, a sexual assault was not

foreseeable with the facts presented, and Defendant did not owe a duty to protect Plaintiff from

the criminal activity of a third-party.

### C.  Conclusion

For the reasons set forth above, Defendants' Motion is GRANTED.  Judgment shall be

entered in favor of Defendant and the case shall be closed.

February 25, 2022                                          _____/s/_____
                                                           Charles B. Day
                                                           United States Magistrate Judge

CBD/pjkm/jkr/zib